GILBERTSON, Appellant, vs. GMEINDER and another, Respondents.*

*January 16—February.17, 1948.*

* Motion for rehearing denied, with $25 costs, on April 13, 1948.

For the appellant there was a brief by *Spohn, Ross, Stevens & Lamb,* attorneys, and *Frank A. Ross* and *Edwin C. Pick* of counsel, all of Madison, and oral argument by *Mr. Pick.*

For the respondent American Mutual Liability Insurance Company there was a brief by *Stephens, Cannon & Cooper,* and oral argument by *Frank M. Coyne,* all of Madison.

HUGHES, J.    It is impossible to determine by the answers of the jury to question 1 whether it found that Gmeinder was guilty of no negligence at all or that he was negligent but not in such manner as to increase the risk which should have been anticipated by Gilbertson.

For instance, if Gmeinder was drunk, then as a matter of law Gilbertson, having been with him all during the time he was drinking, would assume the risk flowing therefrom. *Schubring v. Weggen* (1940), 234 Wis. 517, 291 N. W. 788.

Did the jury by its verdict mean that Gmeinder was not under the influence of intoxicants or that he was and Gilbertson knew or should have known that he was when they entered the car for the return trip to Madison?

That there was confusion on the part of the jury upon the meaning of this question is evident from the record.

After the jury had been out for slightly more than two hours the court called it in, apparently upon his own motion, and asked if he could help with further instructions.    The foreman answered that he thought so.    The following colloquy occurred:  *

The Foreman: "An interpretation of the pronoun 'he' in the first question."
The Court: " 'He?' "
The Foreman: "Yes.    Who that refers to."
The Court: " 'He' in that instance refers to Stanley Gilbertson.    That is in the first part of the—in the first question.

"At the time of, or immediately prior to, the accident in which the automobile operated by Gregory Gmeinder was involved, on April 8, 1945, was Gregory Gmeinder negligent in such manner and degree as to increase the risk to plaintiff,

Stanley Gilbertson, beyond what he,—meaning Stanley Gilbertson,—ought reasonably to have anticipated, in any of the following particulars:

"Does that answer your question?"

The Foreman: "It does."

The Court: "Is there any other subject, Mr. Foreman, that you feel the jury should be further instructed on?"

The Foreman: "No, there isn't, as far as I am concerned. . . ."

A Juror: "I am a little bit puzzled,—at the end of that first question, whether that means, under the circumstances, you add that at the end,—would that convey the idea,—ought to have anticipated under the circumstances?"

The Court: "Beyond what he ought reasonably to have anticipated in the following particulars; in respect to maintaining a sufficient lookout?"

The Juror: "Under the circumstances? Or ought to have expected in any circumstances?"

The Court: "Bearing in mind that this question refers to the collision being inquired into here,—not the collision, but the accident,—in which the Gmeinder automobile ran into this ditch, and in which accident the plaintiff was injured,—bearing in mind the question refers to that particular incident, and reading the question,—I will repeat the question again, and perhaps, by my reading it you might get some different impression than you now have."

(The court reread the first question.)

"It seems to me that should be clear enough. I don't know though. I am sorry that it isn't clear to all of you.

"I will give you a definition of 'negligence' which might be helpful to you,—the same definition that I gave to you in my instructions before. I will read the first part of the instructions,—a part of the instructions.

"'It is necessary for you to get a clear idea of what constitutes negligence.

"'In this case an automobile operator was negligent if, without intending to do any wrong, he did such an act, or omitted to take such precaution that, under the circumstances present at the time, he, as an ordinarily prudent, intelligent automobile operator ought reasonably to have foreseen that damage or injury might probably result from his conduct.

" 'Negligence is also defined as a failure to use that degree of care and caution which is ordinarily used by the majority of persons acting under the same or similar circumstances. The majority of persons usually so act and take such precautions in operating automobiles that under the circumstances present at the time, they have no reasonable cause to foresee that damage or injury might probably result from their conduct.'

"I thought that maybe that is what you had in mind,—a further definition of the term 'negligence' as used in that question. I hope that will be helpful."

Another Juror: "I think that the question became involved because we didn't understand whether you meant ought to be when he got in the car at Madison, or when he got in the car at the fishing point, or at the time when he left the road."

The Court: "In one place in the instructions I refer to the assumption of risk,—the question of assumption of risk. I said that, under certain circumstances, the plaintiff, by getting into the automobile on the return trip home, would be assuming the risk,—under certain circumstances, understand. It would seem to me that for the purpose of this trial, in the questions presented to you, that you would be justified in considering the trip home as the trip under consideration here in this trial, so far as the rights or duties of the respective parties are concerned. Does that answer your question?"

The Juror: "Yes, sir."

The Court: "Mr. Foreman, do you feel now, with these additional instructions that the jury is to make better progress?"

The Foreman: "I do."

The jury again left the courtroom at 4:50 p.m. and returned at 8:20. The court read question 5 on comparative negligence and read the instructions originally given thereon and told the jury to answer the question. At 8:30 p.m. the jury again entered the courtroom, handed its verdict to the court and this conversation was held:

The Court: "Do you and the members of the jury understand that in answering the First Question that a finding of 'Yes' would be a finding of negligence on the part of Gmeinder and the answer of 'No' would be a finding that he was not neg-

ligent? Do you and the members of the jury so understand the question? Answer that Yes or No."

Juror Caldwell: "Would you ask that question again."

The Court: "Do you and the members of the jury understand that with respect to the First Question that an answer of 'Yes' would be a finding that Gmeinder was negligent, and an answer of 'No' would be a finding that he was not negligent?"

Foreman Caldwell: "No, I didn't."

(The verdict was then read to the jury.)

The Court: "Members of the jury, was that and is that now your verdict?"

The jury was then polled by the clerk with substantially the question last asked by the court and each juror answered "Yes."

On the verdict as returned there is no finding of negligence on the part of the defendant, and yet in apportioning the negligence it attributed ninety per cent to Gmeinder and ten per cent to Gilbertson. What was meant by these answers is in such doubt as to require a new trial.

*By the Court.*—Judgment reversed, and cause remanded with instructions to grant a new trial.